Yes, Your Honor, may it please the court, I'm here on behalf of Mr. Giannone, who's also here with us this morning. And this is an appeal from the denial of a writ of error quorum nobis, and this court has in recent years and recent panels recognized that the duty in these cases, in part, is to ferret out and vacate improper convictions, and that is a sacred duty of the courts. What has happened in Mr. Giannone's case is that time has revealed the case is not what the government made it out to be, but it has been a slow revelation, and I think there seems to me everything you've raised was things that could have been raised during the trial or in habeas. That's incorrect, Your Honor, and the reason that's incorrect is because the evidence that would have founded the questions that would have needed to be raised was long after both of those proceedings. So we've brought up four categories of evidence, but I will concede that really two of them, I think, are very important, and the other two add some context as to how this would have mattered in the course of a trial. But the fact that this computer was hacked, and you have to step back to the facts of the case, this was a little bit of a unique way to prosecute. It was hacked after much of the critical evidence was already taken off. I don't know if that's clear, Your Honor, and the reason— No, that's what the record seems to show. Well, but that's the problem, and that's the problem with the Brady issue is that— I mean, what you're doing here, we have a 2007 judgment, and here we are in 2026, and raising issues for the first time, and you want the judgment set—what do you want, actually, in this case? What is your relief? Your Honor, obviously we would love for you to grant the writ, but I think relief— No, no, I'm asking what the relief—if we grant quorum nobis, what do you want? Well, we would vacate the conviction, Your Honor. So he just goes off scot-free, huh? Well, Your Honor, I think that that matters in a Brady case because— And you've established innocence in this case? I think we have, but I don't know that—and let me not overstate that, Your Honor, because I don't think I have to establish innocence. You need to establish a fundamental right, and the one place that we have granted it is where somebody was wrongfully convicted, and it was pretty clear that the judgment had to be set aside, but when you have errors of the type that you're raising, which are almost all evidentiary or incompletions of evidence, if you want to say that, basically that still doesn't say you were innocent, your client was innocent. What it says is that maybe some errors were committed, but quorum nobis is a very rare bird, and we have the doctrines of finality, appeal, and then we have the collateral review under habeas. It seems to me you have to make a pretty strong case that your man was innocent in order to get the conviction set aside, don't you? No, I don't agree with that. Let me walk through why I think that, Your Honor. Lissane, which is one of the more recent leading cases, was a legal innocence case. It wasn't necessarily a wrongful conviction, it was simply just that the law had changed. The other cases, Akinsadi, which is another leading case, was actually an ineffective assistance of counsel case. It was fairly routine. If you have something structural, it seems to me it gets pretty fundamental. If you have a judge that it later turns out was on the take and the other side had paid him off, it seems to me pretty structural. With the subject, that might satisfy the fundamental requirement under quorum nobis. All right, go ahead. I didn't mean to— No, Your Honor, and listen, those are good questions, and I think they need to be addressed because what we haven't seen in the history of these cases, if they've progressed through the more recent four circuit opinions, is a clear Brady violation. In this case, the reason I would disagree with the first premise that you made about these things could have been raised is that the record is replete with instances in the trial where the government is saying there is a star witness in this case, and it is this computer, and it is these chat logs, and it is unimpeachable. That is what he frames to the jury. Days after the trial, the letter arrives from the confidential informant undermining those claims with this computer hack information, and Mr. Giannone raises that. So do you dispute that the hack occurred after the acts for which the defendant was charged? I dispute that we know that's the case, Your Honor, and the reason is because that comes from an affidavit from a Secret Service agent who is revealing what he needs to reveal as slowly as he can. So in the trial, he never says a word about it, and he, in fact, makes some affirmative, in other ways, affirmative statements that turn out later to be impossible. So I don't know that we have that information, because what, and again, the timeline matters, because Mr. Giannone raises this in the motion for new trial. He raises it in this court on direct appeal. He starts to bring it up in 2255, but I think recognizes that he still doesn't have any new information, and this court has spoken on the Brady violation. So as he enters the FOIA litigation from federal prison, he begins to receive documents, and years after he has, to some degree, given up on this claim, he finds this report that is in the record that this man who said he hacked the computer is a very well-known and famous hacker at Secret Services. But he received the FOIA in, what, 2018, 2018? It was before that, Your Honor. I mean, he received it, I think there's some slight dispute, but I will say it appears that it was...  When did he... Around 2015 or 2016. Okay. That's, he received the FOIA documents. Right. And here we are in 2026. That's...  And, Your Honor, I think it matters, the timeliness, I think, matters in two places. So, first of all, that I do think there's a fundamental problem. Well, the district court said, gave one reason in this case, was that the filing was simply untimely, without a sufficient explanation. Right. What's wrong with that? Well, because I think if we look at the time, number one, he's not privy to this information. The earliest date, even if we give the government credit, they say 2015, they think he might have received these documents. But he received thousands of documents, and you can look at what he received in the record. This is not necessarily the memorandum of interview or the DA6 reports that we're used to seeing that are clean, clear, very subject. Give him a full year to read every day he's in prison, read all those documents. It seems to me, if he didn't get a suspicion then, I mean, we're talking about, what, ten years later? At the time that he gets these, Your Honor, I think he had ... Eight years later. Sure, but even if he gets them in prison, he's trying to go through this, and he's out of prison, and he's trying to rebuild his life after prison, he's being put on note, or not put on note, but you're putting a responsibility on him that he would need to understand how all this contextually mattered to his trial, and then understand he immediately needed to move for extraordinary relief. There's been some criticism of the fact that he took his complaint to the Office of Professional Responsibility of the Department of Justice, but that makes sense when we look at the circumstances, and some of the cases talk about the real life circumstances of these people raising these claims, that he has gone to the Department of Justice and said, look, I have found this information that disputes what you said at the trial, what you said in post-conviction proceedings, what you've said in sworn affidavits, and I'm asking you to make a finding for me to help me. And what they come back with, we can't do that. And you're right, there is a delay where not much happens, but I think it's telling that when he does retain counsel, it's around the same time that Lesane comes out. This is, like you said, a rare bird, Your Honor, so I think that it would be too high of a burden to look at a convicted defendant and say, you need to know that you need to raise a coram nobis at the earliest possible point you can raise it. And that actually isn't what the law says. I recognize that one of the mistakes in Sutherland, which this panel heard, was that they just said, well, there's no limit, so we're not bound by anything. Don't make that strong of an argument. What I think we have to do- You know, when I went through the record, I mean, your briefs and the arguments and the record, there is statement after statement that he makes relating to whether something was true or untrue that is palpably untrue. For instance, he talks about a bank account that was withdrawn in San Francisco and he was in New York. Ergo, it was not him that withdrew it. Yet, number one, he admits by stipulation it was his bank account, and number two, he withdrew it through an ATM in New York. Now, to me, it just doesn't hold water. He's just making up arguments which don't even hold water today, wouldn't have held water then. The other argument he makes, he said, my travel showed I was innocent because the car I rented was in another name. Yet, he admits that he used fraudulent names in renting cars. I mean, you go through one thing after the other. The same thing with the trace and the computer. The evidence was that the hack was on a given date, and yet all the critical evidence came from the computer earlier. These things are arguments about evidence, but they're not even legitimate arguments. It seems to me his innocence does not show through at all. This man manipulated things and bragged about it and stipulated that this was his account, and he withdrew money from the fraudulent received sums. Your Honor, I don't agree that these are made-up arguments, and I have to— You don't agree? I do not agree they're made-up arguments. The four classifications of evidence— Well, tell me, how can he make an argument now, 20 years after judgment, 10 years after he gets the FOIA documents, that that was not his money withdrawn from San Francisco? That is in the briefs now. But, Your Honor, I did not lead with those, because I will agree that those are my weaker claims, but I think that it's playing with fire to not raise everything I can in a quorum nobis. But the two things— He can't even raise it because it's illegitimate, and it was decided by a jury. But the fact is, the reasons he argues that it was illegitimate at the time, from the FOIA documents, is just— It's an assumption that you can't withdraw money from a bank in San Francisco while you're in New York, and that's the argument he makes. I could not have rented that car because it was in a different name, yet he brags that he was there. His travel shows he was in a particular city, and he brags about renting cars and other names. This type of stuff is not innocent. But let me put something out there. So during the trial, at the record, I think it's JA-247, there is testimony from the Secret Service agent who says, we have no way of determining the location of the parties that are making any of these communications. It's what he says under oath. And years later, what we find is this trap-and-trace record that you just mentioned that shows locations. Now, trap-and-trace works interestingly differently when you're talking about— So how does that contribute? It doesn't contribute at all to innocence. They have all the transactions and emails. I mean, the evidence, I think, is pretty solid. The jury got it right, and you want us to say, based on these evidentiary re-twists or re-arguments, I still don't understand why the trace, the location helps you a bit. Because, Your Honor, part of this matter is, who is where when these communications are happening? We don't know that this is Mr. Giannone making these conversations. What they're doing is trying to match it to other events. And the two things that matter, they keep saying these chat logs are unimpeachable. I cannot agree with you that knowing later that the computer had been hacked, and no one brought it up— They had about half a dozen different evidentiary matters to demonstrate that it was him, that that was the call he used, that he used it, and that those were— I mean, I don't want to re-argue the thing. I'm going to the point that, really, what you're raising are some evidentiary points that maybe could have been argued differently. I don't think it gains you anything, but here we are, 20 years later, the district court said it was eight years after you got the FOIA documents, and said, you sat on those rights. There's a, you know, there's an aspect of latches. It has to be timely. And the district court relied on that heavily, didn't it? It said eight years was too long to sit on it. And if I could just address one point, my time's out, and I have time on rebuttal to talk. But I am—I do not agree that this is an evidentiary matter that we are re-twisting. These are things that were not known to him at the time of trial. My question was, isn't the main reliance of the district court saying this wasn't timely? Right, and I think the timely does— Wasn't explained. But it does matter with the fundamental, and I think what Your Honor is questioning me about is whether these are fundamental errors, and I do not agree that these are simply evidentiary matters, because no one knew about them. At the trial, these were unknown events. So—and I'll address that later on rebuttal. I don't want to take up more of my time. Thank you, Your Honor. All right, Ms. Hoffman. Good morning, Your Honors. Andrea Hoffman on behalf of the United States. As the court was just discussing, the primary issue underneath at the district court was the timeliness, or lack thereof, as we should say. There are two different grounds on which this court could affirm the dismissal. But the other, we have not yet discussed today, is that the defendant is presuming that there was a discovery error. He has never established that there was a discovery error, that these materials were not produced. And as this court found— I'm sorry, that the what wasn't produced? That all of the materials in the FOIA record weren't produced. As this court found in Rocky Mountain, U.S. v. Rocky Mountain, and as the district—the Supreme Court found in U.S. v. Morgan, there's a presumption that the underlying proceedings were correctly handled. And it's the burden upon the defendant to establish that there was some sort of error. His mere assertions or allegations that he didn't receive these records are insufficient on its face to support that, or establish that point for the record. So this court could dismiss it on that ground alone, since as under this court's established law, such as Scott, you can affirm on any reason that's within the record. But setting that one aside as an unproven fact, mere allegations out there, there's also the timeliness issue. The district court found plainly that there were two periods of time at minimum in this, as the court has recognized nearly 20 years worth of time that has passed since this conviction occurred, that have unexplained or unjustified explanations for the lengthy delay. And frankly, there is still no reasons that have been provided that are worthy of finding that any kind of delay, or the extent of this delay, is justified. No sound reasons have been put forward for the wait between 2008, when the first FOIA request was filed, and 2012— excuse me, 2014, when the next FOIA request was filed. A two-year gap after he received the first records, Your Honor, in 2012. According to the filed pleadings in that FOIA proceeding. The next records were received in 2015. There is then a four-year delay before the OPR complaint. There's then another—quick math, sorry— three-year delay before counsel's retained, and another two-year delay before the Quorum Novus proceeding has been filed. All of without an explanation. To argue that this is a pro se defendant, or complexity of the documents, would open the door to nearly every defendant that ever seeks a FOIA request, having grounds to be able to raise a Quorum Novus petition. Something that the Supreme Court and this Court have been very clear, is an extraordinary rare beast, one that should happen— the Supreme Court has gone so far as to say they can't even necessarily envision circumstances warranting it in this day and age. I think Judge Niemeyer obviously has nailed the most obvious one. When the law changes, when you are no longer legally guilty of something because the acts are no longer considered criminal, something's been reversed, those kinds of circumstances are unique. This is not that. Nor is this, if I turn to the merits of the issues— oh, excuse me, one other point before I move on, on the timeliness. Partially, we know that he could have done it earlier because he did file the first FOIA request in 2008, and he did file the FOIA complaint. So he's chosen not to take other actions, not been unable to do so. Turning to the merits of this matter for a brief moment, there are a couple of underlying pinnings. The question here is whether the District Court's rulings are plausible on the face of the whole record. And in a Brady context, there would be no Brady violation where the defendant had access to— But if we were to agree with you on a timeliness basis, we would not need to go any further? No, sir. No, sir. And if the court had no questions about the merits, I would sit down as opposed to take your time, but I would be happy to address any of the merits issues so that I can clarify anything for the record. Further, it's up to you. I'll give a brief snap on this, a tap on it. On the issue of the chat transcripts and the integrity of the documents, these records were produced at a simultaneous screen recording of everything that was occurring, as well as a simultaneous verbatim translation, a keystroke logger system by the federal government at the time that the records were completed. The integrity of them have not been challenged because they can't be. During the trial, they were playing simultaneous pieces of these to show the integrity. There's no question that the transcripts in May and June of 2005 were not altered. There's no question that there is the stipulation that the court recognized. The criminal conduct was established through the stipulation in the chat transcripts. All of the various other pieces of evidence that defense counsel is talking about were corroboration of Mr. Giannone's identity as the actor in those circumstances. First piece of evidence proving that. It seems to me that goes away immediately when the undercover agent gives him $500 and he deposits it in a bank account. And it turns out at trial, he admits, that was my bank account. It seems to me that ends the case. I do not disagree, Your Honor. And then that's bolstered by two witnesses that came in and personally identified him as someone they know who utilized the chat names that were at issue here. So all of the rest of these records cannot rise to a level of fundamental because they were corroboration solely of, even if we accept for a moment that errors happen, that they were material. I'm just gonna set that aside for a moment. They cannot rise to the level of a fundamental error because they were mere corroboration of the personal identification by two witnesses and his own stipulation that established his identity as an actor in this criminal conduct. Thank you very much, Your Honors. I will ask that you affirm the district court's findings. All right, thank you, Ms. Hoffman. All right, Mr. Henry. Your Honor, if I can address a couple of points because I don't think that, and I can see this is a difficult case and I understand your concern with it, but I think that when you say, you know, the case is over when he withdraws this money from this account. First of all, 600... No, the case isn't over. What I'm saying is he says, his basic argument is that it was not me. I forgot his name, alleged name on the internet. But he says that was not me. But the undercover agent is dealing with that person, gives that person $500. That person deposits it in a bank in San Francisco and then withdraws money from it in an ATM in New York. This man says, that was my account. Now, isn't that a direct link and admission that that person is me? I don't agree that's how it happens, Your Honor. What happens is there's bank account information given to the confidential informant. He sends the money to the bank account. $600. After that, Mr. Giannone agrees he withdrew $500 from this ATM in New York City. That isn't some smoking gun that there's no possible way... No, but it identifies him because the undercover agent was dealing with a person purported to be... Give me his name, internet. Either C.I. Intel or Pit Boss were the two... the ones that the defendant was They were dealing with that person and gave that person, whoever that was, $600. So now the question is who is that person? That person took the $600 and deposited it in San Francisco and that person withdrew it from an ATM in New York $500 of it. And that was stipulated. I don't agree that that's how it happened, Your Honor. What I agree with... I don't agree... I think you're adding the fact in that this person took that money from the undercover and then put it into the bank. That's an extra step. It was the undercover who sent the money to the bank. But let me say this because I think where I don't agree with Your Honor's position on the case and I think this is the underlying premise that you would rule against me on is this idea that these are evidentiary twists that really didn't matter. No, what I'm suggesting to you is that there is a requirement because of this writ is such an extraordinary writ. We only have... We have principles of finality. We have a trial and then we can look at things with habeas as an exception. That's a long-standing writ. Quorum nobis is still there for the exceptional circumstance. I think mostly in a circumstance where it's later determined that the man never committed the crime. But that is not the way it's defined. It's defined as a fundamental and the Supreme Court's made pretty clear it has to be very fundamental. And that is why what I'm not connecting on is that this is a Brady claim that we are making underlying this case. You haven't demonstrated. They used this evidence at trial. I don't understand. Your Honor, maybe I'm not clearly explaining this, but here's what, this is very similar to Parker and Barkow. The government stands up with a witness. Now it happens to be these chat transcripts that they repeatedly say cannot be manipulated. They cannot be impeached. This computer is completely secure. No one ever says there's nothing about a hack in trial. If your Honor's correct on the timing, then they certainly by trial knew that the hack had occurred. And that's actually at 406 of the joint appendix of thereabouts or the reports we rely on where they've gone to this man who is kind of minimizing what he did because it's a little bit unique to use a Netflix transcript as part of evidence, but there's a clear story about what Mr. Lichtenstein was doing. He is one of the most skilled hackers in the world, responsible in part for this billion dollar hack of Bitcoin. This is a man who knows how to manipulate a computer. In Parker and in Barkow, one of the central witnesses who established the guilt to the defendant had something impeachable about them. Arguably in both cases wouldn't necessarily have gone to the heart of what the person said, it just called into question how accurate it was. And that is what matters in a Brady violation. And the problem with the timing argument that we're having is that there's going to be situations where Brady is never uncovered. I think we have to understand that statistically it's possible that a Brady violation escapes all notice. But there are going to be plenty of other times when a Brady violation is uncovered long after the trial occurs. So specifically what I'm addressing is when you say all of this could have been raised at trial or in post conviction, here's why we know that's not the case. Because it was raised in post conviction. But the judge dismissed the concerns because there was nothing to support this idea that there had been any computer hack other than this letter from the confidential informant who was never called at trial. Years later after the timing to bring those had gone, that's when he discovers that in fact the computer was hacked. So not only was the hack something that happened, but there was a detailed report on it. You can also look at page 457 of the Joint Appendix where during the FOIA litigation there is a notation that the case agent says, I have the case file, there are sensitive things in it that Mr. Giannone should not see. And I have no idea what that is. But these are the things that I think this has to have a hearing before we dismiss it so out of hand that the government has, I mean I take issue with the government saying this information was turned over because if it had been it looks like from the notes I see in the FOIA response they would have said we gave it to you under Rule 16, we don't have to give it to you. This is new information. But it's not just new information, it's new information that directly refutes what the government's agents were saying under oath on the stand. Those locations do matter because one of the primary things you would do in any trial is say okay, well here's all the communications you have, here's all the cities from which they originated, I can tell you where I was. But because that wasn't known and they said we don't have any way of telling where the locations were, that was a worthless defense because you wouldn't have been able to establish you were somewhere else because the government didn't ever say where you were. So the location, the trap and trace, and then this hack, I think are a far bigger deal than we seem to be discussing them as because they're not just sort of per chance evidentiary issues that got passed over in trial. It is evidence that directly challenged the credibility, the central theme of the government's case. My client never had it. So now he's brought it up, it's a Brady violation which is fundamental and I think is against timeliness being the sole reason for the dismissal of this petition. Thank you, Your Honor. We'll come down to Greek Council and take a short recess.
judges: Paul V. Niemeyer, Roger L. Gregory, G. Steven Agee